IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-00809-CMA

DEBRA BROWNE,
MARY JANE SANCHEZ,
CYNTHIA STEWART,
STEVE KILCREASE,
HUMANISTS DOING GOOD, and
ERIC NIEDERKRUGER,

      Plaintiffs,

v.

CITY OF GRAND JUNCTION, COLORADO,

      Defendant.

---

### ORDER

---

This matter is before the Court on that part of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [Docket No. 6] that seeks a temporary restraining order.[1]  Plaintiffs Debra Browne, Mary Jane Sanchez, Cynthia Stewart, Steve Kilcrease, Humanists Doing Good, and Eric Niederkruger request an order temporarily enjoining the enforcement of specific provisions of Ordinance No. 4618, enacted by the City of Grand Junction, Colorado on February 19, 2014, pending a final ruling on the merits of plaintiffs' claims that the Ordinance is unconstitutional.  The Court held a hearing on the motion for temporary restraining order on March 21, 2014.

---

[1]Although this case is assigned to Judge Christine M. Arguello, this motion is before the Court pursuant to Federal Rule of Civil Procedure 63.

Counsel for both plaintiffs and defendant appeared at the hearing.  Neither side asked

to present anything other than oral argument at the hearing.

## I.  FINDINGS OF FACT

Upon review of plaintiffs' motion and the exhibits attached to the motion, the

Court makes the following findings:

1.  The Court has jurisdiction to address plaintiffs' motion pursuant to 28 U.S.C.

§ 1331 because plaintiffs assert violations of rights protected under the First and

Fourteenth Amendments pursuant to 42 U.S.C. § 1983.

2.  Venue is proper pursuant to 28 U.S.C. § 1391 because defendant is a

municipality located within this District.

3.  On February 19, 2014, the City of Grand Junction (the "City") adopted

Ordinance Number 4618 (the "Ordinance"), which will take effect on March 23, 2014.

4.  The Ordinance provides in pertinent part:

It shall be unlawful for any person to panhandle or to solicit employment,
business contributions or sales of any kind, or to collect money for the same,
directly from the occupant of any vehicle traveling upon any public street or
highway when:

(a) Such panhandling, solicitation or collection involves the person
performing the activity to enter onto the traveled portion of a public street or
highway to complete the transaction, including, without limitation, entering
onto bike lanes, street gutters or vehicle parking areas; or

(b) The person performing the activity is located such that vehicles cannot
move into a legal parking area to safely complete the transaction.

Notwithstanding the foregoing in this Section 9.05.050, it shall be unlawful
for any person to panhandle or to solicit or attempt to solicit employment,
business, or contributions of any kind directly from the occupant of any
vehicle on any highway included in the interstate or state highway system,
including any entrance to or exit from such highway.

2

Grand Junction, Colo. Mun. Code § 9.05.050 (2014) (Panhandling and solicitation on or near public streets and highways).

5. Six highways run through the City: federal highways 6, 50, I-70, and the I-70 business loop, and state highways 340 and 141. Ex. 7.

6. Plaintiff Mary Jane Sanchez is a resident of Grand Junction. Ex. 14 at 1, ¶ 1.[2] She displays a sign to obtain money for gas in order to be able to drive to and from work. *Id*. One place that Ms. Sanchez solicits money is the "public sidewalk bordering Horizon Drive at the I-70 off ramp." *Id*. at 2, ¶ 6. Many people who see her sign pull into the gas station near where Ms. Sanchez stands to give her money. *Id*. Ms. Sanchez declares that, if not for the passage of the Ordinance, she would "ask for help near the Horizon Drive exit ramp if [she] needed gas money again." *Id*. at 4, ¶ 13.

7. Plaintiff Cynthia Stewart is a resident of Grand Junction. Ex. 15 at 1, ¶ 1. She has been unemployed since 2010 and asks for money in order to pay for her basic expenses. *Id*. at 1, ¶¶ 3-4. She solicits donations by displaying a sign on the sidewalk along North Avenue in Grand Junction, which is also highway 6. *Id*. at 1, ¶ 4. The highway where she displays her sign "has many places to easily, safely, and legally pull out of traffic, park and interact." *Id*. at 2, ¶ 5. Ms. Stewart declares that, if not for the passage of the Ordinance, she would "continue to ask for help when [she] needed it on North Avenue." *Id*. at 3, ¶ 13.

8. On March 18, 2014, plaintiffs brought this action against the City, alleging that certain provisions of the Ordinance violate the First and Fourteenth Amendments to the

---

[2]All citations to exhibits in this Order are to the exhibits attached to plaintiffs' motion.

United States Constitution, as well as parallel provisions of the Colorado State Constitution.  Docket No. 1.  On March 19, 2014, plaintiffs filed a motion for a temporary restraining order and a preliminary injunction to enjoin enforcement of the challenged provisions until a court issues a final ruling on their constitutionality.  Docket No. 6.

## II.  CONCLUSIONS OF LAW

### A.  Standard of Review

A party seeking a TRO must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (internal citation omitted).

### B.  Analysis

Plaintiffs Sanchez and Stewart do not challenge all of § 9.05.050.[3]  Rather, plaintiffs challenge only the last sentence of this provision.  Plaintiffs argue that, whereas the first part of § 9.05.050 is tailored to the City's interest in safety, Docket No. 6 at 32, the last sentence is a blanket prohibition that sweeps in a "wide swath of solicitation speech that is courteous, polite, nonthreatening, nonaggressive, does not pose a risk to public safety, and is squarely protected by the First Amendment."  Docket

---

[3]As a threshold matter, the Court finds that plaintiffs Sanchez and Stewart have standing under Article III to challenge this provision based on their allegations that they will be chilled from engaging in protected speech–namely, solicitation "directly from the occupant of any vehicle" on the highways running through the City–"in order to avoid enforcement consequences."  *N.H. Right to Life Political Action Committee v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).  Although the other plaintiffs may not have standing to challenge this provision of the Ordinance, this Order will refer to Ms. Sanchez and Ms. Stewart as "plaintiffs."

No. 6 at 3.  Plaintiffs interpret the language of the challenged provision to "establish a complete ban on solicitations aimed at 'the occupant of any vehicle,'" *id*. at 33, on any of the federal or state highways that run through the City.  The City does not offer a contrary interpretation.  Plaintiffs contend that the Court should apply strict scrutiny to the challenged provision and should find that this exacting standard has not been met. *Id*. at 22.  The City has not argued that the Court should apply a standard of review other than strict scrutiny.

### 1.  Likelihood of Success on the Merits

The Supreme Court has held that charitable solicitation on the part of organizations is protected under the First Amendment, *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 631-32 (1980), and a number of circuit courts have extended this ruling to cover charitable solicitation on the part of individuals.  *See, e.g.*, *Speet v. Schuette*, 726 F.3d 867, 874-75 (6th Cir. 2013) (collecting cases); *Loper v. New York City Police Dept.*, 999 F.2d 699, 704 (2d Cir. 1993).

The government's ability to regulate protected speech on government or public property turns on the character of the space in which it seeks to implement such regulation.  *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).  In traditional public forums, such as streets and parks, a content-based restriction on speech must satisfy strict scrutiny–that is, it must be "necessary to serve a compelling state interest" and it must be "narrowly drawn to achieve that end."  *Id*.; *see also United States v. Alvarez*, 132 S. Ct. 2537, 2551 (2012) ("when the Government

seeks to regulate protected speech, the restriction must be the 'least restrictive means among available, effective alternatives'") (citation omitted).   "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

Even in a traditional public forum, the government may impose "reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, . . . are narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citation omitted).   A regulation cannot be a content-neutral time, place, or manner restriction if "either the underlying purpose of the regulation is to suppress particular ideas, or if the regulation, by its very terms, singles out particular content for differential treatment." *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (internal citations omitted).

At the March 21, 2014 hearing, the City did not argue that the challenged provision is content-neutral.   The Court finds that such an argument would be unavailing in any event.   The provision applies to "attempt[s] to solicit employment, business, or contributions of any kind."   Grand Junction, Colo. Mun. Code § 9.05.050 (2014).   It does not prohibit people from offering motorists political or religious literature, asking for directions, or engaging in speech on any topic other than requests for money, employment, or other "contributions."   This provision, "by its very terms, singles out

6

particular content for differential treatment" and thus constitutes a content-based restriction on speech. *See Berger*, 569 F.3d at 1051.

The last sentence of § 9.05.050 restricts speech "in the form of . . . a solicitation to pay or contribute money," which is speech protected by the First Amendment. *See Schaumburg*, 444 U.S. at 633. Moreover, the challenged provision restricts speech on public streets and sidewalks, which are "quintessential public forums." *Perry Educ. Ass'n*, 460 U.S. at 45. As a result, the Court finds that strict scrutiny applies here. *See id*. Plaintiffs have made a colorable claim that enforcement of the last sentence of § 9.05.050 against them would infringe their First Amendment rights. The burden therefore shifts to the City to justify the restriction. *See Thalheimer*, 645 F.3d at 1116.

The City contends, and plaintiffs do not dispute, that the challenged provision is intended to serve public safety and that this is a compelling interest. However, plaintiffs argue that this provision is not narrowly tailored to serve this interest because it prohibits all solicitation, including passive solicitation, along the state and federal highways that run through the City, even where it is safe for drivers to pull over. Docket No. 6 at 28, 33-34.

The Court agrees that the last sentence of § 9.05.050 is not narrowly tailored to justify the restrictions it places upon protected speech. As noted by plaintiffs, the overbreadth of the challenged provision is evident when compared with subsections (a) and (b) of § 9.05.050, which are narrowly written to apply only to dangerous behavior (the solicitor entering the "traveled portion of a public street or highway to complete the transaction") or dangerous locations (places where "vehicles cannot move

7

into a legal parking area to safely complete the transaction"). In contrast, the last sentence of § 9.05.050 prohibits solicitation "on any highway included in the interstate or state highway system, including any entrance to or exit from such highway," regardless of the fact that there are places along the highways that run through the City where individuals may solicit without posing any threat to public safety. The City has not offered evidence or argument in support of the proposition that it is necessary to restrict protected solicitation that does not threaten public safety in order to achieve its stated goal. A city may not "unnecessarily impose[] significant burdens on First Amendment-protected speech." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 948-50 (9th Cir. 2011) (striking down ordinance prohibiting solicitation of business, employment, and contributions on streets and highways as overbroad).

Since the City has not carried its burden of showing that the challenged provision satisfies strict scrutiny, the Court finds that plaintiffs have established a likelihood of success on the merits of their claim that the last sentence of § 9.05.050 is facially invalid under the First Amendment. In First Amendment cases, "the likelihood of success on the merits will often be the determinative factor." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (citation omitted).

The Court also finds that plaintiffs have satisfied the other factors that justify issuance of a temporary restraining order. As to irreparable harm, should the last sentence of § 9.05.050 go into effect on March 23, 2014, plaintiffs will suffer irreparable harm to their First Amendment right to display their signs. The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes

8

irreparable injury." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (citation omitted).  The third and fourth factors identified in *Roda Drilling*, 552 F.3d at 1208, also weigh in favor of plaintiffs.  When a law is likely unconstitutional, the government's interest in enforcing the law does not outweigh that of individuals in securing the protection of their constitutional rights.  *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012).  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."  *Id*. at 1132.

The Court finds that plaintiffs have satisfied the elements necessary to obtain a temporary restraining order of the challenged sentence in § 9.05.050.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the portion of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [Docket No. 6] seeking a temporary restraining order is GRANTED in part.  It is further

**ORDERED** that the City of Grand Junction, Colorado and its officers, agents, servants, employees, and attorneys are enjoined from enforcing the last sentence of Grand Junction, Colo. Mun. Code § 9.05.050 (2014).  It is further

**ORDERED** that, pursuant to Fed. R. Civ. P. 65(b)(2), this order shall expire on April 4, 2014.  It is further

**ORDERED** that, pursuant to Fed. R. Civ. P. 65(c), plaintiff will not be required to post a bond given that the Court is unable to identify any costs the City will incur through non-enforcement of the challenged provision of the Ordinance.  It is further

**ORDERED** that plaintiffs' motion for a temporary restraining order is otherwise denied.  Plaintiffs' motion for a preliminary injunction remains pending.

DATED March 21, 2014.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge