**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-00809-CMA-KLM

DEBRA BROWNE,
MARY JANE SANCHEZ,
CYNTHIA STEWART,
STEVE KILCREASE,
HUMANISTS DOING GOOD, and
ERIC NIEDERKRUGER,

      Plaintiffs,

and

GREENPEACE, INC.,

      Plaintiff-Intervenor,

v.

CITY OF GRAND JUNCTION, COLORADO,

      Defendant.

---

## ORDER

---

      Throughout the country, cities and municipalities are passing ordinances to limit panhandling and begging.  In response, citizens and organizations are challenging those measures as abridging their First Amendment rights to Freedom of Speech and Expression.  This case involves one such challenge.  For the reasons that follow, the Court grants in part and denies in part the City of Grand Junction's motion to dismiss, and reserves ruling on whether the statute violates the First Amendment.

## I.   BACKGROUND

On February 19, 2014, the City of Grand Junction ("the City") adopted Ordinance No. 4618 with the stated goal of protecting public safety by prohibiting aggressive panhandling and dangerous solicitation of motorists.  In response, Plaintiffs Debra Browne, Mary Jane Sanchez, Cynthia Stewart, Steve Kilcrease, Humanists Doing Good, and Eric Niederkruger[1] filed the instant suit, alleging that Ordinance No. 4618 violates their First Amendment rights to Freedom of Speech and Expression.  (Doc. # 1.)

Plaintiffs moved this Court to temporarily restrain the City from enforcing challenged provisions of Ordinance No. 4618[2] until a court issues a final ruling on their constitutionality.  (Doc. # 6.)   On March 21, 2014, Judge Brimmer[3] restrained the prohibition on panhandling on public highways and highway exits.  (Doc. # 15.) Consequently, the City's Chief of Police stayed enforcement of Ordinance No. 4618. (Doc. # 46 at 5.)

---

[1] On April 25, 2014, Greenpeace, Inc. intervened in this suit (Doc. # 36).  On April 29, 2014, Alexis Gallegos also intervened; however, she was voluntarily dismissed on January 21, 2015 (Doc. # 76).  Therefore, the Court refers to the remaining Plaintiffs and Plaintiff-Intervenor collectively as "Plaintiffs."

The City has asked this Court to clarify whether its order dismissed with or without prejudice Ms. Gallegos as a Plaintiff-Intervenor.  (Doc. # 79.)  The City asks this Court to dismiss her with prejudice, which Plaintiffs oppose.  The Court grants in part and denies in part that request and dismisses Ms. Gallegos without prejudice.

[2] A copy of Ordinance 4618 is available at Doc. # 49-1.

[3] Judge Brimmer presided over the motion for a temporary restraining order pursuant to Fed. R. Civ. P. 63.

On April 2, 2014, the City Council voted to adopt a new panhandling ordinance,

Ordinance No. 4627, which amended portions of Ordinance 4618.  Ordinance 4627

defines panhandling as follows:

> *Panhandle/panhandling* shall mean to knowingly approach, accost or stop
> another person in a public place and solicit that person without that
> person's consent,[4] whether by spoken words, bodily gestures, written
> signs or other means, for money, employment or other thing of value.

Grand Junction, Colo., Municipal Code § 9.05.020 (2015).[5]  As relevant here, Ordinance

4627 makes it unlawful for any person to panhandle

> (a) One-half (1/2) hour after sunset to one-half (1 /2) hour before sunrise;
>
> . . .
>
> (e) If the person panhandling knowingly continues to request the person
> solicited for money or other thing of value after the person solicited has
> refused the panhandler's initial request;
>
> . . .
>
> (g) Within twenty (20) feet of an automatic teller machine or of a bus stop;
>
> (h) On a public bus;
>
> (i) In a public parking garage, parking lot or other parking facility;
>
> (j) When the person solicited is present within the patio or sidewalk
> serving area of a retail business establishment that serves food and/or

---

[4] Plaintiff Niederkruger brings claims that his right to receive information is violated by
Ordinance 4618.  (Doc. # 1 at 16-17, 19-20.)  However, in Ordinance 4627, the City includes the
phrase "without that person's consent," which appears to allow people, like Mr. Niederkruger, to
consent to receiving information.  Accordingly, the Court questions whether Mr. Niederkruger
states a claim under the new ordinance.

[5] The Court provides this official citation even though it does not appear that the ordinance has
been codified in the municipal code.  A copy of Grand Junction, Colo., Ordinance 4627 (April 7,
2014) is available at Doc. # 49-2.

> drink, or waiting in line to enter a building, an event, a retail business
> establishment, or a theater.

Grand Junction, Colo., Municipal Code § 9.05.040 (2015).

Ordinance 4627, therefore, repealed the ban on soliciting "at-risk" persons, panhandling near schools, and soliciting motorists traveling on particular roadways. It also reduced the no-panhandling "bubble" around ATMs and bus stops from 100 feet to 20 feet and limited the prohibition on panhandling in parking lots to those that are "public." *Compare id. with* Grand Junction, Colo., Ordinance 4618 (February 19, 2014) (repealed). It is a misdemeanor to violate Ordinance 4627. Grand Junction, Colo., Municipal Code § 9.05.060 (2015).

The City filed the instant motion to dismiss, arguing that this Court lacks subject matter jurisdiction and that Plaintiffs have failed to state a claim. (Doc. # 46.) That motion is ripe for this Court's review. (Doc. ## 49, 52.)

## II.   STANDARD OF REVIEW

The City moves to dismiss Plaintiffs' claims pursuant to both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Thus, the Court will set forth the proper standard of review for motions under each rule.

### A.   FED. R. CIV. P. 12(b)(1)

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate when the Court lacks subject matter jurisdiction over the claims asserted in the complaint. As set forth by the Tenth Circuit in *Holt v. United States*, the standard of review for a Rule 12(b)(1) motion is as follows:

4

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms.  First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (internal citations omitted).  The burden of establishing subject matter jurisdiction rests on the party asserting jurisdiction.  *See Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

## B.      FED. R. CIV. P. 12(b)(6)

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the formal sufficiency of a complaint.  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).  A complaint will survive such a motion if it contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  For a motion to dismiss, "[t]he question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

5

In reviewing a Rule 12(b)(6) motion, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which a relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

## III.   DISCUSSION

**A.   SUBJECT MATTER JURISDICTION**

### 1.   Standing

The City argues that Plaintiffs lack standing to challenge prohibitions on solicitations on public buses and of people within sidewalk serving areas and waiting in line. *See* Grand Junction, Co., Ordinance 4627, §§ 9.05.040(h), (j). Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." The Supreme Court has established that the irreducible constitutional minimum of standing contains three elements. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). There must be an "injury in fact"; a causal connection between the injury and the conduct complained of; and it must be "likely," not merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 560-61 (citations omitted).

The Supreme Court has defined an "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks, citations, and footnote omitted). "Allegations of possible future injury do not satisfy the injury in fact requirement, though a plaintiff need not expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087-88 (10th Cir. 2006) (internal quotation marks and citations omitted).

> For purposes of the standing inquiry, the question is not whether the alleged injury rises to the level of a constitutional violation. That is the issue on the merits. For standing purposes, [the court asks] only if there was an injury in fact, caused by the challenged action and redressable in court.

*Id.* at 1088.

In a suit for prospective relief based on a "chilling effect" on speech, plaintiffs "can satisfy the requirement that their claim of injury be 'concrete and particularized' by (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so **because of** a credible threat that the statute will be enforced." *Id.* at 1089 (emphasis in original). The Tenth Circuit has explained, "Though evidence of past activities obviously cannot be an indispensable element—people have a right to speak for the first time—such evidence lends concreteness and specificity to the plaintiffs' claims, and avoids the danger that Article III requirements be reduced to

7

the formality of mouthing the right words." *Id.* If Plaintiffs satisfy these three criteria, it is

not necessary to show that they have specific plans or intentions to engage in the type

of speech affected by the challenged government action. *See id.* (citations omitted).

Plaintiffs argue that they "need not allege specifically that they wish to ask for

contributions in each separately-proscribed situation." (Doc. # 49 at 10.)  Relying on a

Fourth Circuit decision, Plaintiffs contend that this Court should "decline the City's

invitation to rigidly impose such a precise level of specificity at the pleading stage." *See*

*Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013).  In *Clatterbuck*,

the Fourth Circuit determined that the plaintiffs had standing to challenge an ordinance

that prohibited begging within two fifty-foot buffer zones in Charlottesville's downtown

mall. *Id.*  The court reasoned that, "[a]lthough the complaint does not allege that

Appellants have begged or plan to beg specifically within the fifty-foot buffer zones, it

does, more generally, allege that Appellants regularly beg on the Downtown Mall, and

that they suffer harm by being prevented from fully exercising their First Amendment

rights." *Id.*

The Supreme Court has explained the requisite showing at various stages in

litigation:

> At the pleading stage, general factual allegations of injury resulting from
> the defendant's conduct may suffice, for on a motion to dismiss we
> presume that general allegations embrace those specific facts that are
> necessary to support the claim. In response to a summary judgment
> motion, however, the plaintiff can no longer rest on such mere allegations,
> but must set forth by affidavit or other evidence specific facts, which for
> purposes of the summary judgment motion will be taken to be true. And at
> the final stage, those facts (if controverted) must be supported adequately
> by the evidence adduced at trial.

*Lujan*, 504 U.S. at 561 (internal citations, alterations, and quotation marks omitted).

The Court agrees that Plaintiffs' allegations, which include that Mr. Kilcrease, a street musician, "receives donations while busking at night for the bar crowd on Main Street," and "has performed for donations in front of Quincy's, which is a bar," embraces facts which confer standing in that he may have violated the prohibition on soliciting of people within sidewalk serving areas and waiting in line. *See* Grand Junction, Co., Ordinance 4627, § 9.05.040(j). However, allegations that various Plaintiffs ask for donations at or near bus stops are not sufficient to embrace the specific facts necessary to support a claim that they have also solicited on public buses. *See* Grand Junction, Co., Ordinance 4627, § 9.05.040(j). Unlike the plaintiffs in *Clatterbuck*, who made general allegations that they solicit on the downtown mall, which may include the buffer zones, allegations that Plaintiffs solicit at bus stops do not encompass solicitations on the actual buses. Accordingly, Plaintiffs do not have standing to challenge that provision of the ordinance.

    2.    Mootness

Next, the Court addresses the City's argument that Plaintiffs' challenges to portions of Ordinance No. 4618 are rendered moot by the passage of Ordinance of No. 4627. The complaint challenges portions of Ordinance No. 4618 that were removed by the enactment of Ordinance No. 4627, including prohibitions on panhandling on a highway or a highway exit ramp and within 100 feet of any school or school grounds, and soliciting "at-risk" people.

This Court has no subject matter jurisdiction over claims that are moot. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Id.* (quoting *Disability Law Ctr. v. Millcreek Health Ctr.,* 428 F.3d 992, 996 (10th Cir. 2005)). "Without a live, concrete controversy, [this court lacks] jurisdiction to consider claims no matter how meritorious." *Id.* (quoting *Habecker v. Town of Estes Park,* 518 F.3d 1217, 1223 (10th Cir. 2008)).

Plaintiffs assert that although these portions of Ordinance No. 4618 were removed, there is still a live case or controversy with respect to those prohibitions because the City's voluntarily cessation of the allegedly unlawful conduct does not moot the claims. It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982). "[I]f it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *Id.* at 289, n. 10 (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953)). Therefore, "[a] claim is moot when no reasonable expectation exists that the alleged violation will recur and interim relief of events have eliminated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979). The party asserting mootness, here, the City, has the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

First, this Court must determine whether it can say with assurance that "there is no reasonable expectation that the alleged violation will recur." *County of Los Angeles*, 440 U.S. at 631. Relying on *Aladdin's Castle*, Plaintiffs argue that their constitutional challenge remains live because the City Council is free to reenact the prior version of Ordinance No. 4618. However, the Tenth Circuit has observed that "a critical factor in the *Aladdin's Castle* decision was the City's openly-announced intention to reenact the unconstitutional ordinance if the case was dismissed as moot." *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1224 (10th Cir. 2001) (citing *Valero Terrestrial Corp. v. Paige,* 211 F.3d 112, 116 (4th Cir. 2000); *Kentucky Right to Life, Inc. v. Terry,* 108 F.3d 637, 645 (6th Cir. 1997); *Barilla v. Ervin,* 886 F.2d 1514, 1521 (9th Cir. 1989)). Therefore, the Tenth Circuit has limited *Aladdin's Castle* to "preclud[e] a mootness determination in cases challenging a prior version of a state statute only when the legislature has openly expressed its intent to reenact the challenged law." *Id.* Accordingly, precedent in this circuit makes clear that *Aladdin's Castle* is inapplicable where there is "no evidence in the record that the legislature intends to reenact the prior version of the disputed statute." *Id.* at 1223-24. This Court sees no reason that similar principles do not apply where, as here, it is a city council that has repealed an ordinance, rather than a state legislature that has repealed a statute. *Cf. Rio Grande Silvery Minnow*, 601 F.3d at 1116 ("even when a legislative body has the power to re-enact an ordinance or statute, ordinarily an amendment or repeal of it moots a case challenging the ordinance or statute").

In the instant case, there is no evidence that City Council intends to reenact the portions of the ordinance that were removed.  Although Plaintiffs note that "the City Council has staunchly defended the constitutionality of the very provisions it was repealing," this indicates only a **mere possibility** that the City **may** attempt to reenact the removed portions of the ordinance.  This mere possibility is insufficient to enliven a moot controversy.  *See id.* at 1119.  Plaintiffs further argue that repeal was a tactic to avoid litigation costs, suggesting that the City may reenact the ordinance upon resolution of this case.  However, "the fact that the lawsuit may have prompted the City's action does not alone show the city's intent to later reenact the challenged ordinance." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 901 (9th Cir. 2007) (citing *Smith v. University of Washington Law School,* 233 F.3d 1188, 1194 (9th Cir. 2000) (where defendant has given no indication of intention to reinstate policy invalidated while case was pending and "we will not assume that it will. We also will not assume bad faith.")).  As the Ninth Circuit recognized, "it would be an odd incentive structure that punishes a city for repealing an ordinance in response to a litigant's suggestion that said ordinance was illegal." *Id.* at 906 n. 3.

Although the City's "burden concerning the unlikelihood of recurrence is a heavy one, [] it by no means requires proof approaching metaphysical certitude." *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1525 (10th Cir. 1992) (citing *Moore v. Thieret,* 862 F.2d 148, 150 (7th Cir. 1988)).  The City has met its burden to show that "there is no reasonable expectation that the alleged violation will recur." *See County of Los Angeles,* 440 U.S. at 631.

The second part of the *County of Los Angeles* test requires this Court to determine whether interim events have "completely and irrevocably eradicated the effects of the alleged violation."  440 U.S. at 631.  Before Ordinance No. 4618 went into effect, Judge Brimmer restrained the prohibition on panhandling on public highways and highway exits.  Consequently, the City's Chief of Police stayed enforcement of Ordinance No. 4618.  The City Council then voted to adopt Ordinance No. 4627.  Accordingly, the Court cannot identify any lingering effects from prior enactment of Ordinance No. 4618 and Plaintiffs' challenges to that law are moot.   *See Rio Grande Silvery Minnow*, 601 F.3d at 1120.

## B.   FAILURE TO STATE A CLAIM

The City argues that this Court should dismiss Plaintiffs' claims because Ordinance 4627 does not violate the First Amendment.  This Court has no trouble concluding that "speech and expressive conduct that comprise begging merit First Amendment protection."  *Clatterbuck*, 708 F.3d at 553.  The Supreme Court has held that the solicitation of "charitable contributions" is protected speech.  *Riley v. Nat'l Fed'n of the Blind of N.C.,* 487 U.S. 781, 789 (1988).  Circuit courts who have addressed the question have extended that holding to solicitations on behalf of an individual.  *See, e.g., Clatterbuck*, 708 F.3d at 553; *Speet v. Schuette*, 726 F.3d 867, 875 (6th Cir. 2013); *Gresham v. Peterson*, 225 F.3d 899, 904 (7th Cir. 2000); *Smith v. City of Fort Lauderdale,* 177 F.3d 954, 956 (11th Cir. 1999) ("Like other charitable solicitation, begging is speech entitled to First Amendment protection."); *Loper v. New York City Police Dep't,* 999 F.2d 699, 704 (2d Cir. 1993) ("We see little difference between those

who solicit for organized charities and those who solicit for themselves in regard to the message conveyed. The former are communicating the needs of others while the latter are communicating their personal needs. Both solicit the charity of others. The distinction is not significant for First Amendment purposes.").

The government's ability to regulate protected speech turns on the character of the space in which it seeks to implement such regulation. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983).  However, regulation of speech in traditional public forums[6] is allowed if the regulations are reasonable with respect to the time, place, or manner of speech. *See Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989).  Any time, place, or manner restrictions must: (1) be content-neutral; (2) be "narrowly tailored to serve a significant governmental interest"; and (3) "leave open ample alternative channels for communication of the information." *Id.*  The government's restriction of speech is content neutral if it is "justified without reference to the content . . . of the regulated speech." *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 665 (2010).  "A content-based regulation, on the other hand, is presumptively unconstitutional, and subject to strict scrutiny." *American Civil Liberties Union of Nevada v. City of Las Vegas,* 466 F.3d 784, 792 (9th Cir. 2006) (internal citations and quotation marks omitted).  In such a situation, the City must show that its ordinance is the least restrictive means of furthering a compelling government interest and that the

---

[6] Although Ordinance 4627 contains recitals asserting that certain areas, such as public bus stops, are not traditional public forums, the City does not persist in this assertion in its briefs.

ordinance is actually necessary to achieve that interest.  *See United States v. Alvarez, -*
*-- U.S.---, ---, 132 S. Ct. 2537, 2552 (2012) (discussing strict scrutiny).*

The determination as to whether laws that regulate panhandling are content
neutral is foundational: courts that have determined that an ordinance is content neutral
have likewise found it to be constitutional.  Courts are split on whether laws that
regulate panhandling and begging are content neutral.  *Compare American Civil*
*Liberties Union of Nevada,* 466 F.3d at 794 (content based); *Clatterbuck,* 708 F.3d at
556 (same); *Speet,* 726 F.3d 867 (same) *with Norton v. City of Springfield, Ill.*, 768 F.3d
713, 714-15 (7th Cir. 2014) (content neutral); *Thayer v. Worcester,* 755 F.3d 60 (1st Cir.
2014) (Souter, J.), *petition for cert. filed*, 83 U.S.L.W. 13 (U.S. Oct. 14, 2014) (No. 14-
428) (same); *ISKCON of Potomac, Inc. v. Kennedy*, 61 F.3d 949, 954–55 (D.C. Cir.
1995) (same); *see also Browne v. City of Grand Junction*, 27 F. Supp. 3d 1161, 1166
(D. Colo. 2014) (Brimmer, J.) (Ordinance 4618 is content based).  In one such decision,
where the Seventh Circuit determined that an ordinance was content neutral, Judge
Easterbrook expressed reservation: "[T]he conflict among the circuits about panhandling
ordinances shows that it is difficult to be confident about how the line between subject-
matter (usually allowed) and content-based (usually forbidden) distinctions is drawn.
We do not profess certainty about our conclusion that the ordinance is content neutral."
*Norton*, 768 F.3d at 717.

In *Thayer*, Justice Souter, writing for the First Circuit, determined that an
ordinance, which is strikingly similar to the ordinance at issue here, was content neutral.
755 F.3d at 67-70.  On October 14, 2014, the *Thayer* plaintiffs petitioned the Supreme

Court for review of the First Circuit's decision, and the petition was distributed for conference on January 9, 2015.  This Court has been monitoring that petition with great interest because of the implications it may have on the instant case.  However, to date, the Supreme Court has yet to decide whether it will hear that case.  This Court defers ruling on the merits of whether Plaintiffs have stated a claim that Ordinance 4627 is unconstitutional until the Supreme Court determines whether it will grant certiorari in *Thayer*.

## IV.   CONCLUSION

Based on the foregoing, it is ORDERED that the City's Motion to Dismiss for Failure to State a Claim of Plaintiffs' and Intervenors' Complaints Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. # 46) is GRANTED IN PART AND DENIED IN PART.  Specifically, the City's motion is GRANTED insofar as it argues that Plaintiffs' challenges to Ordinance 4618 are moot and Plaintiffs lack standing to challenge the prohibition against soliciting on public buses.  *See* Grand Junction, Co., Ordinance 4627, § 9.05.040(j).  The City's motion is DENIED insofar as it argues that Plaintiffs lack standing to challenge the prohibition against soliciting people within sidewalk serving areas and waiting in line.  *See* Grand Junction, Co., Ordinance 4627, § 9.05.040(j).  The Court reserves ruling on the balance of the City's arguments.  It is

FURTHER ORDERED that Plaintiffs' Unopposed Motion for Order to Oral Argument on Motion to Dismiss (Doc. # 55) is DENIED WITHOUT PREJUDICE. However, the Court may order oral argument at a later date.  It is

FURTHER ORDERED that Defendant's Motion to Clarify re 76 Order on Motion

to Dismiss Party (Doc. # 79) is GRANTED IN PART AND DENIED IN PART.  The Court

hereby clarifies that Alexis Gallegos is DISMISSED WITHOUT PREJUDICE.

DATED:  March 30, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge