**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-00809-CMA-KLM

DEBRA BROWNE,
MARY JANE SANCHEZ,
CYNTHIA STEWART, and
HUMANISTS DOING GOOD,

      Plaintiffs,

and

GREENPEACE, INC.,

      Plaintiff-Intervenor,

v.

CITY OF GRAND JUNCTION, COLORADO,

      Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS'
MOTION FOR LEAVE TO FILE A SECOND SUPPLEMENTAL COMPLAINT, AND
DENYING DEFENDANT'S MOTION TO STAY THE COURT'S CONSIDERATION OF
THE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

---

      This case involves a constitutional challenge to a municipal ordinance that

regulates panhandling.  Currently before the Court are cross-motions for summary

judgment.  Defendant City of Grand Junction ("Grand Junction" or "the City") filed its

motion for summary judgment on February 17, 2015.  (Doc. # 84.)  That same day,

Plaintiffs Debra Browne, Mary Jane Sanchez, Humanists Doing Good, and Eric

Niederkruger[1], and Plaintiff-Intervenor Greenpeace, Inc. (collectively "Plaintiffs") filed their motion for summary judgment.  (Doc. # 85.)  Also before the Court is Plaintiffs' Motion for Leave to File a Second Supplemental Complaint, which was filed on November 21, 2014 (Doc. # 66), and Grand Junction's Motion to Stay the Court's Consideration of the Pending Cross-Motions for Summary Judgment for Sixty Days, which was filed on September 22, 2015 (Doc. # 110).  For the reasons that follow, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Summary Judgement (Doc. # 85), GRANTS IN PART AND DENIES IN PART Grand Junction's Motion for Summary Judgment (Doc. # 84), DENIES Plaintiffs' Motion for Leave to File a Second Supplemental Complaint (Doc. # 66), and DENIES Grand Junction's Motion to Stay the Court's Consideration of the Pending Cross-Motions for Summary Judgment for Sixty Days (Doc. # 110).

## I.   FACTUAL AND PROCEUDRAL BACKGROUND

### A.   Ordinance No. 4618

On February 19, 2014, Grand Junction adopted Ordinance No. 4618, entitled "An Ordinance Prohibiting Activities Relating to Panhandling."  (Doc. # 1-1.)  Ordinance No. 4618 amended Title 9 of the Grand Junction Municipal Code to include a new Chapter 5, entitled "Prohibited Activities."  Section 9.05.020 of Ordinance No. 4618, which set forth the defined terms, stated, "*Panhandle / panhandling* shall mean to knowingly approach, accost or stop another person in a public place and solicit that person, whether by spoken words, bodily gestures, written signs or other means, for money, employment or other thing of value."  (Doc. # 1-1 at 2-3.)  Section 9.05.040 of Ordinance No. 4618, entitled "General panhandling and solicitation," stated:

---

[1] Mr. Niederkruger was dismissed from this action June 8, 2015.  (Doc. # 102.)

It shall be unlawful for any person to panhandle

(a) One-half (1/2) hour after sunset to one-half (1/2) hour before sunrise;

(b) If the person panhandling knowingly engages in conduct toward the person solicited that is intimidating, threatening, coercive or obscene and that causes the person solicited to reasonably fear for his or her safety;

(c) If the person panhandling directs fighting words to the person solicited that are likely to create an imminent breach of the peace;

(d) If the person panhandling knowingly touches or grabs the person solicited;

(e) If the person panhandling knowingly continues to request the person solicited for money or other thing of value after the person solicited has refused the panhandler's request;

(f) If the person panhandling knowingly solicits an at-risk person;

(g) In such a manner that the person panhandling obstructs a sidewalk, doorway, entryway, or other passage way in a public place used by pedestrians or obstructs the passage of the person solicited or requires the person solicited to take evasive action to avoid physical contact with the person panhandling or with any other person;

(h) Within one hundred (100) feet of an automatic teller machine or of a bus stop;

(i) On a public bus;

(j) In a parking garage, parking lot or other parking facility;

(k) When the person solicited is present within the patio or sidewalk serving area of a retail business establishment that serves food and/or drink, or waiting in line to enter a building, an event, a retail business establishment, or a theater;

(l) On or within one hundred (100) feet of any school or school grounds.

(Doc. # 1-1 at 3.)

Ordinance No. 4618 also contained section 9.05.050, entitled "Panhandling and soliciting on or near public streets and highways," which stated:

> It shall be unlawful for any person to panhandle or to solicit employment, business contributions or sales of any kind, or to collect money for the same, directly from the occupant of any vehicle traveling upon any public street or highway when:
>
> > (a) Such panhandling, solicitation or collection involves the person performing the activity to enter onto the traveled portion of a public street or highway to complete the transaction, including, without limitation, entering onto bike lanes, street gutters or vehicle parking areas; or
> >
> > (b) The person performing the activity is located such that vehicles cannot move into a legal parking area to safely complete the transaction.
>
> Notwithstanding the foregoing in this Section 9.05.050, it shall be unlawful for any person to panhandle or to solicit or attempt to solicit employment, business, or contributions of any kind directly from the occupant of any vehicle on any highway included in the interstate or state highway system, including any entrance to or exit from such highway.

(Doc. # 1-1 at 4.)

Section 9.05.060, entitled "Enforcement and penalties," stated that "[v]iolation of any provision of this Chapter shall constitute a misdemeanor."  (Doc. # 1-1 at 4.) Section 9.05.030 stated that Ordinance No. 4618 was to go into effect "thirty (30) days following publication."  (Doc. # 1-1 at 3.)  Ordinance No. 4618 was published on February 21, 2014, and, therefore, was to go into effect on March 23, 2014.

**B.      Plaintiffs' Complaint and Plaintiff Stewart's Supplemental Complaint**

Before Ordinance No. 4618 went into effect, Plaintiffs Debra Browne, Mary Jane

Sanchez, Cynthia Stewart, Steve Kilcrease[2], Humanists Doing Good, and Eric

Niederkruger filed suit on March 18, 2014.  (Doc. # 1.)  The complaint states that

Plaintiff Debra Browne, a resident of Palisade, Colorado, and Plaintiffs Mary Jane

Sanchez and Cynthia Stewart, residents of Grand Junction, are "needy and engage[ ] in

peaceful, nonthreatening solicitation in Grand Junction in a manner and in situations

that violate the Ordinance."  (Doc. # 1 at 3.)  The complaint also states that Plaintiff

Humanists Doing Good "is a non-profit corporation that carries out peaceful,

nonthreatening fundraising activities in Grand Junction in a manner and in situations

that violate the Ordinance."  (Doc. # 1 at 3.)  Plaintiffs explicitly state in their complaint

that they challenge subsections (a), (e), (f), and (h) through (l) of section 9.05.030, and

that they do not challenge subsections (b), (c), (d), and (g).  (Doc. # 1 at 6.)  Plaintiffs

also challenge the final sentence of section 9.05.050, but they do not challenge

subsections (a) and (b) of section 9.05.050.  (Doc. # 1 at 6.)

In their first claim for relief, Plaintiffs assert a facial challenge to the disputed

subsections of section 9.05.050 of Ordinance No. 4618 on constitutional grounds,

alleging that "[t]he challenged Ordinance unconstitutionally infringes or imminently

threatens to infringe the freedom of Plaintiffs to fully exercise their First Amendment

rights, including their rights of freedom of speech and freedom of expression, in violation

---

[2] Mr. Kilcrease was voluntarily dismissed with prejudice from this action on January 9, 2015.  (Doc. # 72.)

of the First Amendment." (Doc. # 1 at 14.) In their fifth claim for relief[3], Plaintiffs allege that "[t]he Ordinance unconstitutionally infringes or imminently threatens to infringe the freedom of Plaintiffs to fully exercise their rights of freedom of speech and freedom of expression, in violation of Article II, Section 10 of the Colorado Constitution." (Doc. # 1 at 17.)

In their second and sixth claims for relief, Plaintiffs allege that "[t]he Ordinance establishes classifications that discriminate against Plaintiffs Browne, Stewart, Sanchez, Kilcrease, and Humanists Doing Good solely on the basis of the content of the communications that they wish to direct to the public" and that "[t]he discrimination against Plaintiffs unconstitutionally burdens the exercise of fundamental rights," including "the rights of freedom of speech and expression as well as the fundamental right to liberty." (Doc. # 1 at 15, 18.) According to Plaintiffs, the classifications established by Ordinance No. 4618 deny them the equal protection of the laws, in violation of both the Fourteenth Amendment to the United States Constitution (second claim for relief) (Doc. # 1 at 15) and the equal protection component of Article II, Section 25 of the Colorado Constitution (sixth claim for relief) (Doc. # 1 at 18).

In their third and seventh claims for relief, Plaintiffs allege that Ordinance No. 4618: (1) "fails to provide adequate notice that would enable the ordinary person to understand what conduct it prohibits"; (2) "fails to establish adequate guidelines to govern law enforcement"; and (3) "authorizes and encourages arbitrary and discriminatory enforcement." (Doc. # 1 at 16, 19) Thus, Plaintiffs assert, Ordinance No.

---

[3] Plaintiffs' fourth and eight claims for relief relate solely to Mr. Niederkruger. (Doc. # 1 at 16, 19-20.) Because Mr. Niederkruger has been dismissed from the action, these claims no longer apply.

4618 is unconstitutionally vague, in violation of both the Fourteenth Amendment to the United States Constitution (third claim for relief) (Doc. # 1 at 16, 19) and the Due Process Clause of Article II, Section 25 of the Colorado Constitution (seventh claim for relief) (Doc. # 1 at 19).

Plaintiffs seek a declaratory judgment holding that the challenged provisions of Ordinance No. 4618 violate both the United States Constitution and the Colorado Constitution.  (Doc. # 1 at 20.)  Plaintiffs also request injunctive relief prohibiting Grand Junction from enforcing the challenged provisions of Ordinance No. 4618.  (Doc. # 1 at 20.)

On August 11, 2014, Plaintiff Stewart filed an unopposed motion for leave to file a supplemental complaint (Doc. # 60), which the Court granted on August 19, 2014. (Doc. # 61.)  In her supplemental complaint, Plaintiff Stewart "sets forth events that have transpired since the filing of the original Complaint in this action on March 18, 2014." (Doc. # 62 at 1.)  According to Plaintiff Stewart, "[t]hese events support a claim for nominal damages," which she seeks in addition to all Plaintiffs' requests for declaratory and injunctive relief.  (Doc. # 62 at 1.)

### C.    Plaintiffs' Motion for Preliminary Injunctive Relief

On March 19, 2014, Plaintiffs moved for a temporary restraining order and preliminary injunction.  (Doc. # 6.)  During a March 21, 2014 hearing on Plaintiffs' motion (Doc. # 16), United States District Judge Philip A. Brimmer[4] found that Plaintiffs lacked standing to challenge the provisions of section 9.05.040 because Plaintiffs, who did not allege in their complaint that they approach, accost, or stop anyone before

---

[4] Plaintiffs' motion was before Judge Brimmer pursuant to Federal Rule of Civil Procedure 63.

soliciting them, do not engage in "panhandling" as defined in section 9.05.020 and, therefore, Plaintiffs did not have a credible fear of prosecution.  (Doc. # 16 at 42.)  However, Judge Brimmer did find that Plaintiffs had standing to challenge section 9.05.050 and that they were entitled to an injunction prohibiting Grand Junction from enforcing the last sentence of that section, which dealt with soliciting on public highways and highway exits.  (Doc. # 16 at 53.)  Judge Brimmer issued a written order that provided further analysis and support for his ruling from the bench.  (Doc. # 15.)

Immediately following the hearing, Plaintiffs filed an emergency motion for reconsideration of Judge Brimmer's order (Doc. # 10), which included a supplemental declaration from Plaintiff Stewart stating that "when [she] ask[s] people for money at the bus stop[, she] sometimes walk[s] up to and approach[es] the person in a non-aggressive way and ask[s] for the change that [she] need[s] to cover [her] bus fare."  (Doc. # 10-1.)  In a written order, Judge Brimmer denied Plaintiffs' emergency motion stating that the submission of Plaintiff Stewart's supplemental declaration "d[id] not provide a legitimate basis for reconsideration" because those facts were available for presentation at the time of the original argument.  (Doc. # 14 at 4.)

On March 27, 2014, the parties filed a joint motion to withdraw Plaintiffs' preliminary injunction motion because "[t]he parties . . . reached an agreement which obviates the need to hold a hearing or prepare briefing on the Plaintiffs' PI Motion."  (Doc. # 21 at 2.)  The Chief of Police of Grand Junction, John Camper ("Chief Camper"), issued an order to the police officers under his command to "not enforce Ordinance No. 4618 pending resolution of the claims subject to litigation in this civil action."  (Doc. # 21

at 2.)  That same day, this Court granted the joint motion to withdraw Plaintiffs' motion for a preliminary injunction.  (Doc. # 22.)

On March 31, 2014, Greenpeace, Inc., moved for leave to intervene as a plaintiff in this action.  (Doc. # 23.)  Greenpeace is an "independent, fully member-driven non-profit organization" that uses canvass operations to provide financial support to the organization and educate the public about its work.  (Doc. # 23 at 2.)  Greenpeace's complaint in intervention echoes the same claims and requests for relief set forth in Plaintiffs' complaint.  (Doc. # 23-2.)[5]

### D.     Ordinance No. 4627

On April 2, 2014, the Grand Junction City Council passed Ordinance No. 4627, entitled "An Emergency Ordinance to Amend Ordinance No. 4618 Regulating Panhandling Activities in Public Places."  (Doc. # 25-4.)  Ordinance No. 4627 amended the definition of "panhandle / panhandling" to include the phrase "without that person's consent" after "solicit that person," so that the amended definition reads:

> *Panhandle / panhandling* shall mean to knowingly approach, accost or stop another person in a public place and solicit that person *without that person's consent*, whether by spoken words, bodily gestures, written signs or other means, for money, employment or other thing of value.

(Doc. # 25-4 at 4 (emphasis added to highlight the added language).)  Ordinance No. 4627 also amended section 9.05.040, which sets forth the specific restrictions on panhandling.  Ordinance No. 4627 differs from Ordinance No. 4618 in that it: (1) removed entirely the restriction on panhandling an "at-risk person"; (2) reduced from

---

[5] On April 25, 2014, the Court granted Greenpeace's motion to intervene.  (Doc. # 35.) Three days later, on April 28, 2014, Alexis Gallegos filed an unopposed motion for leave to intervene as a plaintiff in this action.  (Doc. # 37.)  That motion was granted on April 29, 2014.  (Doc. # 40.)  On January 20, 2015, Ms. Gallegos was dismissed without prejudice.  (Doc. ## 76, 96.)

100 feet to 20 feet the area around an ATM or bus stop within which panhandling is prohibited; (3) narrowed the prohibition on panhandling to "public parking garages" specifically, as opposed to "parking garages" generally; and (4) removed entirely the prohibition on panhandling on or within 100 feet of any school or school grounds.  (Doc. # 25-4 at 5.)  Ordinance No. 4627 also removed the last sentence in section 9.05.050. (Doc. # 25-4 at 6.)  Pursuant to section 9.05.030, Ordinance No. 4627 took effect "immediately upon passage" by the City Council.  (Doc. # 25-4 at 5.)  Grand Junction planned to begin enforcement of Ordinance No. 4627 on April 14, 2014.[6]  (Doc. # 25-5 at 5.)

### E.    Grand Junction's Motion to Dismiss

On May 19, 2014, Grand Junction filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. # 46.)  While this motion to dismiss was pending, Plaintiffs filed their Motion for Leave to File a Second Supplemental Complaint on November 21, 2014 (Doc. # 66), and both parties filed cross-motions for summary judgment on February 17, 2015 (Doc. ## 84, 85).

On March 30, 2015, this Court granted in part and denied in part Grand Junction's motion to dismiss.  (Doc. # 96.)  Specifically, this Court granted Grand Junction's motion "insofar as it argues that Plaintiffs' challenges to Ordinance 4618 are moot and Plaintiffs lack standing to challenge the prohibition against solicitation on buses."  (Doc. # 96 at 16.)  Grand Junction had argued that Plaintiffs' challenge to Ordinance No. 4618 was moot because that ordinance had been replaced by Ordinance No. 4627, and that Plaintiffs lacked standing to challenge the prohibition against

---

[6] Based on the record before the Court, it does not appear that Grand Junction ever enforced Ordinance No. 4627.

solicitation on buses because none of them asserted that they had solicited, or planned to solicit, donations on buses.  This Court denied Grand Junction's motion to dismiss "insofar as it argues that Plaintiffs lack standing to challenge the prohibition against soliciting people within sidewalk serving areas and waiting in line." (Doc. # 96 at 16.) This Court reserved ruling on the balance of Grand Junction's arguments.  (Doc. # 96 at 16.)  On June 8, 2015, this Court denied the remainder of Grand Junction's motion to dismiss, concluding that Plaintiffs sufficiently stated First Amendment, equal protection, and due process claims.  (Doc. # 102.)

### F.    Grand Junction's Motion for Summary Judgment

Grand Junction's motion for summary judgment presents four arguments: (1) this Court lacks subject-matter jurisdiction over the claims because Plaintiffs lack standing and because some of Plaintiffs' claims are moot (Doc. # 84 at 14-19); (2) Ordinance No. 4627 does not violate Plaintiffs' free speech rights (Doc. 84 at 19-31); (3) Plaintiffs' equal protection claims fail (Doc. # 84 at 31-33); and (4) Plaintiffs' due process challenges fail (Doc. # 84 at 33-35).

Grand Junction argues that Plaintiffs lack standing—and, therefore, this Court lacks subject-matter jurisdiction—because their conduct is not covered by Ordinance No. 4627.  (Doc. # 84 at 15.)  This argument is based on Grand Junction's assertion that Plaintiffs "all admit that the people who engage with them do so voluntarily of their own free will" and that Plaintiffs Browne and Greenpeace "admit they do not approach, accost, or stop anyone." (Doc. # 84 at 15.)  According to Grand Junction, the prohibitions of Ordinance No. 4627 do not reach Plaintiffs' conduct because the ordinance explicitly defines "panhandling" as "knowingly approach[ing], accosting[ing], or stop[ping] another person" to solicit that person "without that person's consent."

(Doc. # 84 at 16.)  Thus, under Grand Junction's reading of Ordinance No. 4627, the conduct engaged in by Plaintiffs is not panhandling and, therefore, not limited in any way by Ordinance No. 4627.

Grand Junction argues that this Court also lacks subject-matter jurisdiction because Plaintiffs' challenges to Ordinance No. 4618 "were rendered moot by the passage of Ordinance No. 4627." (Doc. # 84 at 17.)  Specifically, Grand Junction notes that Ordinance No. 4627 removed the prohibition on panhandling on a highway or highway exit ramp, removed the restriction on panhandling "at-risk" individuals, and removed the prohibition on panhandling on or within 100 feet of any school or school grounds.  (Doc. # 84 at 18.)  Grand Junction asserts that "[t]here is no evidence that [it] intends to reenact those provisions of the Ordinance."  (Doc. # 84 at 18.)

Grand Junction also argues that it is entitled to summary judgment because the undisputed material facts demonstrate that Ordinance No. 4627 does not violate either the First Amendment to the United States Constitution or Article II, Section 10 of the Colorado Constitution.  (Doc. # 84 at 19.)  Grand Junction asserts that Ordinance No. 4627 is a "content-neutral time, plane, and manner restriction" and, therefore, intermediate scrutiny applies.  (Doc. # 84 at 19.)  According to Grand Junction, Ordinance No. 4627 "satisfies intermediate scrutiny because it is narrowly tailored to a legitimate government interest and leaves open ample alternative means of communication."  (Doc. # 84 at 19.)  Grand Junction's motion for summary judgment does not address whether Ordinance No. 4627 satisfies strict scrutiny.

Grand Junction argues that it is also entitled to summary judgment on Plaintiffs' equal protection claims because Plaintiffs "are not members of a suspect class and the

Ordinance does not impinge their fundamental rights." (Doc. # 84 at 31.) In support of

its position, Grand Junction asserts that the United States Supreme Court "does not

recognize a suspect classification based on wealth, or lack thereof." (Doc. # 84 at 31.)

Therefore, according to Grand Junction, rational basis review applies and the

undisputed facts demonstrate that Ordinance No. 4627 is rationally related to a

legitimate government purposes. (Doc. # 84 at 32.)

Lastly, Grand Junction argues that Plaintiffs' due process claims fail because

Ordinance No. 4627 is not impermissibly vague. (Doc. # 84 at 34.) In support of this

argument, Grand Junction points out that Ordinance No. 4627: (1) "expressly defines

what constitutes 'panhandling,' 'knowingly,' 'obscene,' and 'obstruct'"; (2) "sets forth in

detail the precise places, times, and manners that [limit] a person's conduct"; and (3)

"exempts inadvertent violations (because of the knowledge requirement) and exempts

consensual encounters." (Doc. # 84 at 34.) Therefore, according to Grand Junction,

Ordinance No. 4627 "provides fair notice of the conduct it proscribes and is not subject

to arbitrary application." (Doc. # 84 at 35.)

### G.    Plaintiffs' Motion for Summary Judgment

In their motion for summary judgment, Plaintiffs' argue that they are entitled to

summary judgment because the undisputed facts show that Ordinance No. 4627

violates their freedom of speech as protected by the First Amendment to the United

States Constitution and Article II, Section 10 of the Colorado Constitution. (Doc. # 85 at

18.) In support of their position, Plaintiffs argue that Ordinance No. 4627 is a content-

based restriction and, therefore, presumptively unconstitutional and subject to strict

scrutiny. (Doc. # 85 at 19.) Plaintiffs argue that each of the challenged provisions of

Ordinance No. 4627 cannot survive strict scrutiny. (Doc. # 85 at 28-33.)

Plaintiffs argue that they are entitled to summary judgment on their equal protection claims because "[t]he elements [of an equal protection claim] are met by establishing that the ordinance discriminates on the basis of content," which Plaintiffs assert they have done in discussing their free speech claims.  (Doc. # 85 at 36.)

Plaintiffs argue that they are entitled to summary judgment on their due process claims because the undisputed facts demonstrate that Ordinance No. 4627 is unconstitutionally vague.  (Doc. # 85 at 37.)  In support of this argument, Plaintiffs assert that Ordinance No. 4627 is vague because: (1) it is unclear whether the ordinance prohibits "passive" panhandling (i.e., soliciting by displaying a sign) (Doc. # 85 at 37-39); and (2) it is unclear whether the consent provision requires the solicitor to obtain consent before soliciting someone (Doc. # 85 at 39).  Thus, Plaintiffs argue, Ordinance No. 4627 is not drafted with sufficient clarity to enable the ordinary person to understand what conduct is prohibited, and Ordinance No. 4627 fails to provide law enforcement with adequate guidance in order to prevent arbitrary and discriminatory enforcement.  (Doc. # 85 at 37.)

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997).  When considering a motion for

summary judgment, the court must "construe the factual record and reasonable inferences therefrom in the light most favorable to the nonmovant." *Id.* at 39-40.

Where, as here, the parties file cross-motions for summary judgment, each motion is considered separately and "the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). However, when faced with cross summary judgment motions, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties." *James Barlow Family Ltd. P'ship v. David Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).

### B.      Freedom of Speech Claims

The First Amendment to the United States Constitution unequivocally states that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I.[7] It is no exaggeration to say that the First Amendment is the bedrock of American democracy. *See, e.g.*, *Speiser v. Randall*, 357 U.S. 513, 530 (1958) (Black, J., concurring) (stating that the freedoms secured by the First Amendment "are absolutely indispensable for the preservation of a free society in which government is based upon the consent of an informed citizenry and is dedicated to the protection of the rights of all"); *Palko v. Connecticut*, 302 U.S. 319, 327 (1937) (stating that freedom of speech is "the matrix, the indispensable condition, of nearly every other form of freedom"), overruled on other grounds by *Benton v. Maryland*, 395 U.S. 784 (1969).

Because of the First Amendment, "a government, including a municipal government vested with state authority, 'has no power to restrict expression because of

---

[7] The First Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment.  *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 749 n.1 (1976).

its message, its ideas, its subject matter, or its content.'" *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015) (quoting *Police Dept. of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)).  For this reason, whenever a restriction is challenged on First Amendment grounds, it must be determined at the outset whether that restriction is "content-based" or "content-neutral."  A law or ordinance regulating speech is "content-based" if it "applies to particular speech because of the topic discussed or the idea or message expressed."  *Id.* at 2227.  When deciding whether a challenged law or ordinance is content-based, a court must "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys."  *Id.*

A content-based restriction is presumptively unconstitutional and subject to strict scrutiny.  *Id.* at 2226.  A facially content-based law must pass strict scrutiny "regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the idea contained' in the regulated speech."  *Id.* at 2228 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)).  "[A]n innocuous justification cannot transform a facially content-based law into one that is content neutral."  *Id.*

To withstand strict scrutiny, the law or ordinance must be "necessary to serve a compelling state interest."  *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987).  To demonstrate that a law or ordinance is necessary to serve a compelling state interest, the government must show that the law or ordinance is the "least restrictive means" of achieving that vital interest.  *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).  The government bears the burden of demonstrating that a content-based restriction passes strict scrutiny.  *Reed*, 135 S. Ct. at 2231.

"Only a law that is substantially overbroad may be invalidated on its face." *City of*

*Hous. v. Hill*, 482 U.S. 451, 458 (1987) (citations omitted).  Whether a restriction is

substantially overbroad depends primarily upon whether it reaches a substantial amount

of protected speech or conduct.  *Id*. (citing *Hoffman Estates v. The Flipside, Hoffman*

*Estates, Inc.*, 455 U.S. 489, 494 (1982)).

### 1.   Ordinance No. 4627 is a Content-Based Restriction on Protected Speech

This Court determined in its prior order granting in part and denying in part Grand

Junction's motion to dismiss that Ordinance No. 4627 is a content-based restriction on

protected speech.  (Doc. # 102 at 13.)  The Court need not reevaluate that decision

here as that determination is now the law of the case.  *See, e.g.*, *Arizona v. California*,

460 U.S. 605, 618 (1983) ("As most commonly defined, the [law of the case] doctrine

posits that when a court decides upon a rule of law, that decision should continue to

govern the same issues in subsequent stages of the same case.").  Therefore, the Court

applies strict scrutiny to Ordinance No. 4627 when considering the parties' cross

motions for summary judgment.

Before beginning its analysis, the Court notes that the parties filed their summary

judgment motions prior to the Court issuing its ruling on Grand Junction's motion to

dismiss, in which it determined that Ordinance No. 4627 is a content-based restriction.

Therefore, one of the issues addressed in each of the summary judgment motions is the

level of judicial scrutiny that should be applied to Ordinance No. 4627.  In their summary

judgment motion, Plaintiffs correctly argue that strict scrutiny applies because

Ordinance No. 4627 is a content-based restriction.  (Doc. # 85 at 18.)  Grand Junction,

on the other hand, takes the position in its summary judgment motion that intermediate

scrutiny applies because Ordinance No. 4627 is a content-neutral time, place, and manner restriction.  (Doc. # 84 at 19.)  In none of its briefing does Grand Junction argue in the alternative that, even if strict scrutiny applies, Ordinance No. 4627 withstands that more exacting standard of judicial review.  In addition, following the Court's issuance of its ruling in which it stated that strict scrutiny applies, Grand Junction did not request permission to file a supplemental brief in which it addressed whether Ordinance No. 4627 meets strict scrutiny.  Nevertheless, the Courts believes that it is able to rule on the parties' cross motions for summary judgment, despite the fact that Grand Junction's briefing does not apply the correct level of scrutiny.  The Court believes that additional briefing from Grand Junction would not alter the Court's ultimate conclusion.

In addition, the Court notes that a little more than a week after the issuance of its order on Grand Junction's motion to dismiss, the United States Supreme Court issued its ruling in *Reed v. Town of Gilbert, Arizona*, 135 S. Ct. 2218 (2015).  In *Reed*, the Supreme Court held that a town's "comprehensive code governing the manner in which people may display outdoor signs" amounted to "content-based regulations of speech that cannot survive strict scrutiny."  *Reed*, 135 S. Ct. at 2224.  Although the facts of *Reed* did not involve municipal regulation of panhandling, the case is significant to the matter at hand—and First Amendment jurisprudence more generally—because it provides clarification as to how lower courts should go about determining whether a restriction on protected speech is content-based or content-neutral.

In *Reed*, the Ninth Circuit Court of Appeals had concluded that the sign code was content neutral because the town "'did not adopt its regulation of speech [based on] disagree[ment] with the message conveyed,' and its justifications for regulating

temporary directional signs were 'unrelated to the content of the sign.'" *Id.* at 2227

(quoting *Reed v. Town of Gilbert, Ariz.*, 707 F.3d 1057, 1071-72 (9th Cir. 2013))

(alterations in original). The Supreme Court reversed finding that the Ninth Circuit had

erred because its analysis "skip[ped] the crucial first step in the content-neutrality

analysis: determining whether the law is content neutral on its face." *Id.* at 2228.

Importantly, the Supreme Court stated that "[a] law that is content based on its face is

subject to strict scrutiny regardless of the government's benign motive, content-neutral

justification, or lack of 'animus toward the idea contained' in the regulated speech." *Id.*

(quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). Thus, *Reed*

instructs that "whether a law is content neutral on its face" must be considered "*before*

turning to the law's justification or purpose." *Id.* (emphasis in original).

The Supreme Court also used *Reed* to clarify the distinction between "viewpoint

discrimination" and "content discrimination." Viewpoint discrimination, which is "the

regulation of speech based on 'the specific motivating ideology or the opinion or

perspective of the speaker,'" is simply a "'more blatant' and 'egregious form of content

discrimination.'" *Id.* at 2230 (quoting *Rosenberg v. Rector and Visitors of Univ. of Va.*,

515 U.S. 819, 829 (1995)). In other words, viewpoint discrimination prohibits speech

specifically based on the particular point of view of the speaker. Content discrimination,

on the other hand, prohibits speech based on the broad topic being discussed. For

example, a town ordinance generally prohibiting all speech about war would be content

discrimination, whereas a town ordinance specifically prohibiting only anti-war speech

would be viewpoint discrimination. Although viewpoint discrimination is more "blatant"

and "egregious" than content discrimination, the Supreme Court in *Reed* noted that

content discrimination is also prohibited by the First Amendment. *Id.* ("[I]t is well established that '[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic.'") (quoting *Consol. Edison Co. of N.Y. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 530, 537 (1980)) (alteration in original). Thus, *Reed* makes clear that "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.*[8]

According to *Reed*, "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2227. In *Reed*, the Supreme Court instructed that when a court is determining whether a regulation of speech is facially content based, it must consider whether the regulation "'on its face' draws distinctions based on the message a speaker conveys." *Id.* The Supreme Court further instructed that while "[s]ome facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose." *Id.* Nevertheless, "[b]oth are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Id.*

The Court engages in this extended discussion of *Reed* because it confirms the correctness of this Court's prior conclusion that Ordinance No. 4627 is a content-based speech restriction. The Court believes it is also important to briefly note two decisions

---

[8] Applying this principle to an example more akin to the present matter, a law prohibiting all solicitation speech in a public forum would be an example of content discrimination. On the other hand, a law prohibiting solicitation for only environmental causes would be an example of viewpoint discrimination. Both types of laws are prohibited by the First Amendment.

that were issued after *Reed* in cases similarly dealing with municipal panhandling regulations and cited by the parties in this matter.

In a June 19, 2014 decision in *Thayer v. City of Worcester, Massachusetts*, 755 F.3d 60 (1st Cir. 2014), the First Circuit Court of Appeals had concluded that a municipal panhandling ordinance was content neutral because it was "not designed to suppress messages expressed by panhandlers, Girl Scouts, the Salvation Army, campaign politicians, or anyone else subject to restriction." *Thayer*, 755 F.3d at 71. In its opinion, written by retired Associate Justice Souter, the First Circuit focused exclusively on the city's intent and justification for passing the ordinance. *Id.* at 67 ("In determining whether a particular regulation is content-neutral, the principal enquiry is 'whether the government has adopted a regulation of speech because of disagreement with the message it conveys.'"). The First Circuit affirmed the District Court's denial of the plaintiffs' motion for a preliminary injunction. *Id.* at 78.

On June 29, 2015, a week and a half after issuing its decision in *Reed*, the United States Supreme Court granted the *Thayer* plaintiffs' petition for a writ of certiorari, vacated the judgment of the First Circuit, and remanded the case "for further consideration in light of [*Reed*]." *Thayer v. City of Worcester, Mass.*, 135 S. Ct. 2887 (2015). To date, the First Circuit has not yet issued its opinion on remand.

Like the First Circuit's first opinion in *Thayer*, on September 25, 2014, the Seventh Circuit Court of Appeals concluded that a city ordinance regulating panhandling was content neutral—though it admitted that it did not "profess certainty about [that] conclusion." *Norton v. City of Springfield, Ill.*, 768 F.3d 713, 717 (7th Cir. 2014). In reaching its decision, the Seventh Circuit focused on the fact that "[t]he ordinance is

indifferent to the solicitor's stated reason for seeking money, or whether the requester states any reason at all." *Id.* In addition, the Seventh Circuit pointed to the fact that "what activates the prohibition [in the ordinance] is *where* a person says something (in the 'downtown historic district') rather than what position a person takes." *Id.* Thus, the Seventh Circuit evaluated the ordinance "by the standard for time, place, and manner restrictions" and found that the ordinance passed muster under intermediate scrutiny.

The plaintiffs in *Norton* filed a petition for rehearing, which the Seventh Circuit deferred consideration of until the Supreme Court decided *Reed*. *Norton*, --- Fed. Appx. ---, Case No. 13-cv-3581, 2015 WL 4714073, at *1 (7th Cir. Aug. 7, 2015). After *Reed* was decided, the Seventh Circuit applied it to the ordinance at issue and found that the ordinance "regulates 'because of the topic discussed.'" *Id.* (quoting *Reed*, 135 S. Ct. at 2227). Therefore, according to the Seventh Circuit, the ordinance is "a form of content discrimination" under *Reed*. *Id.* at *2. The Seventh Circuit remanded the case to the district court with the instruction that it enter an injunction prohibiting enforcement of the ordinance. *Id.*

Although only persuasive, the Court believes that the outcomes in *Thayer* and *Norton* provide yet additional support for the correctness of its prior conclusion that Ordinance No. 4627 is a content-based speech restriction.

### 2. The Challenged Provisions of Ordinance No. 4627 Do Not Withstand Strict Scrutiny

Having concluded that Ordinance No. 4627 is a content-based restriction on protected speech, the Court presumes that the ordinance is unconstitutional, and it must be struck down unless Grand Junction can demonstrate that it is "necessary to serve a compelling state interest." *Ark. Writers' Project*, 481 U.S. at 231.

As stated above in section II.B.1, Grand Junction takes the position in all of its briefing that Ordinance No. 4627 is a content-neutral time, place, and manner restriction that is subject to intermediate scrutiny.  Despite the fact that Grand Junction's briefing addresses the incorrect level of scrutiny, the Court finds that, even if it had argued to the correct standard, Grand Junction would be unable to demonstrate that Ordinance No. 4627 is necessary to serve a compelling state interest.  Therefore, the challenged provisions of Ordinance No. 4627 are unconstitutional under the First Amendment and cannot be enforced.

In its brief in support of its motion for summary judgment, Grand Junction argues that there is a "close fit" between Ordinance No. 4627 and "the harm intended to be regulated."  (Doc. # 84 at 25.)  According to Grand Junction, the harm that is intended to be regulated is "aggressive behavior in connection with certain solicitation activities."  (Doc. # 84 at 25.)  As proof of this alleged aggressive solicitation, Grand Junction cites the deposition testimony of Chief Camper and Grand Junction City Manager Richard Englehart ("City Manager Englehart").  (Doc. # 84 at 25.)

During his deposition, Chief Camper stated that, generally speaking, Grand Junction "had seen an increase or had become aware of an increase in more reports of aggressive panhandling."  (Doc. # 84-1 at 17.)  Chief Camper then discussed two specific examples.  First, Chief Camper described how, following an annual conference of chiefs of police held in Grand Junction, he was "approached on at least three occasions by either chiefs or their spouses indicating that they had been aggressively panhandled near or at the Convention Center."  (Doc. # 84-1 at 19.)  Chief Camper stated that the panhandlers in this instance were allegedly "very persistent and, at least

in one case, . . . [verbally] abusive towards the spouse of one of the chiefs." (Doc. # 84-1 at 19.) Second, Chief Camper discussed a specific instance in which a county employee was alleged to have been "pretty aggressively harassed by vagrants near the 4th/Main Wells Fargo at about noon."

> She was well dressed, walking towards the bank, when the subjects approached her for money. When she refused, they became loud and aggressive and made comments about the police taking away their tents and having nowhere to stay. She was pretty intimidated . . . .

(Doc. # 84-1 at 19.) Chief Camper also recalled, generally, "some discussion about the [restaurant] patios, that [Grand Junction] had had increased complaints of that, and also when people are waiting to enter a line to go into some event or they're sort of in a queue to get into an event or theater." (Doc. 84-1 at 17.)

During his deposition, City Manager Englehart stated that he was told about "some challenges downtown with the restauranteurs and that people, while they were having lunch, were being approached aggressively to give money." (Doc. # 84-1 at 22.) City Manager Englehart also discussed two instances during which he, personally, was "aggressively panhandled":

> I pulled up to an intersection, and a gentleman that was walking alongside my car—I have a convertible—yelled at me, asked me if I had any money. And I said, I'm sorry, I don't. He walked out next to my car, leaned over the top, and said, Come on, Dude. You drive a car like this, you've got money. Give me any money that you may have. I said, I'm sorry, sir. I don't have any money. Now he's out in the traffic lane. He sees the change in my cup-holders. He says, Well, you've got money right there. And I said, I'm sorry, sir, you are going to need to leave. And he had a few choice words and walked off.
>
> . . .

> I was pulling money out of a bank and a gentleman stood
> there and waited until I finished.  He says, Can you spare
> some of that money you just pulled out?  And I said, No, sir.
> He said, All right, thank you, and he walked off.  Those are
> my personal experiences.

(Doc. # 84-1 at 23.)

Grand Junction argues that Ordinance No. 4627 is narrowly tailored because it

"only addresses conduct in certain limited zones and at limited times" and it "does not

sweep in any more conduct than is necessary to address the City's legitimate interest in

promoting public safety."  (Doc. # 84 at 25.)  The Court does not question that "public

safety" is a compelling governmental interest.  *See, e.g., Schenck v. Pro-Choice

Network of W. N.Y.*, 519 U.S. 357, 375 (1997) (discussing "public safety and order" as a

valid governmental interest).  However, Grand Junction cannot demonstrate that the

challenged provisions of Ordinance No. 4627 are necessary to serve that interest.

Simply put, the challenged portions of Ordinance No. 4627 are over-inclusive

because they prohibit protected speech that poses no threat to public safety.  For

example, subsection (a) of section 9.05.040 of Ordinance No. 4627 prohibits

panhandling "[o]ne-half (1/2) hour after sunset to one-half (1/2) hour before sunrise."

(Doc. # 25-4 at 5.)  Grand Junction has not demonstrated that this prohibition on

protected speech is necessary for public safety.  None of the alleged instances of

"aggressive panhandling" —the stated impetus for Ordinance No. 4627—occurred at

night.  In fact, Chief Camper himself stated that they "don't see a lot of" nighttime

panhandling in Grand Junction.  (Doc. # 86-2 at 23.)  There is no indication that

panhandling at night—no matter the location in Grand Junction—is inherently

dangerous or threatening to the public.  Therefore, Grand Junction has not shown that a

blanket prohibition on panhandling at night is necessary to advance public safety.

Subsection (e) of section 9.05.040 of Ordinance No. 4627 prohibits panhandling if "[t]he person panhandling knowingly continues to request the person solicited for money or other thing of value after the person solicited has refused the panhandler's initial request." In one of the examples of "aggressive panhandling" discussed by Chief Camper, the panhandlers were allegedly "very persistent." (Doc. # 84-1 at 19.) The Court interprets this to mean that the panhandlers requested money or a thing of value more than once. In addition, in the encounter described by City Manager Englehart that took place when he was driving his car, it appears that he may have been solicited more than once. (Doc. # 84-1 at 23.) However, in neither instance does it appear that the safety of the person being solicited was threatened simply because the person doing the soliciting had made a second request after the initial request was refused. Grand Junction has not shown—and the Court does not believe—that a repeated request for money or other thing of value necessarily threatens public safety. Thus, a ban on multiple requests is not necessary to serve a compelling governmental interest.

Subsection (g) of section 9.05.040 of Ordinance No. 4627 prohibits panhandling "[w]ithin twenty (20) feet of an automatic teller machine or of a bus stop." (Doc. # 25-4 at 5.) During his deposition, City Manager Englehart described an instance in which he personally was solicited after obtaining money from an ATM. (Doc. # 84-1 at 23.) City Manager Englehart stated that after he denied the request for money, the requester said, "All right, thank you," and walked away. (Doc. # 84-1 at 23.) The Court does not see how that interaction in particular threatened City Manager Englehart's safety or, more generally, how any request for money, simply because it occurs within 20 feet of an ATM (whether or not the person solicited used or planned to use the ATM),

constitutes a threat to public safety.  With regard to the ban on panhandling within 20

feet of a bus stop, none of the specifically identified instances of "aggressive

panhandling" identified by Grand Junction occurred within 20 feet of a bus stop.  Grand

Junction has not shown—and the Court does not believe—that a request for money,

simply because it occurs within 20 feet of a bus stop, threatens public safety.

Therefore, the ban on panhandling with 20 feet of an ATM or bus stop is not necessary

to serve a compelling government interest.

Subsection (i) of section 9.05.040 of Ordinance No. 4627 prohibits panhandling

"[i]n a public parking garage, parking lot or other parking facility."  (Doc. # 25-4 at 5.)

None of the specifically identified instances of "aggressive panhandling" identified by

Grand Junction occurred in a public parking garage, parking lot, or other parking facility.

Similar to the other prohibitions set forth in Ordinance No. 4627, Grand Junction has not

shown—and the Court does not believe—that a solicitation for money or other thing of

value is a threat to public safety simply because it takes place in a public parking

garage, parking lot, or other parking facility.  Therefore, the ban on panhandling in these

areas is not necessary to serve a compelling government interest.

Lastly, subsection (j) of section 9.05.040 of Ordinance No. 4627 prohibits

panhandling "[w]hen the person solicited is present within the patio or sidewalk serving

area of a retail business establishment that serves food and/or drink, or waiting in line to

enter a building, an event, a retail business, or a theater."  (Doc. # 25-4 at 5.)  None of

the specific instances of "aggressive panhandling" identified by either Chief Camper or

City Manager Englehart took place while the person solicited was either within the patio

or sidewalk serving area of a restaurant, café, or bar, or waiting in line to enter a

building, an event, a retail business, or a theater.   Nevertheless, like all of the other

challenged prohibitions, Grand Junction has not shown—and the Court does not

believe—that the panhandling of an individual in the areas identified in subsection (j),

without more, constitutes a threat to public safety.   Therefore, the ban on panhandling

individuals in the locations specified in subsection (j) is not necessary to serve a

compelling government interest.

The Court notes that certain behavior that may be engaged in by solicitors when

soliciting could threaten public safety.   For example, the solicitor may engage in conduct

that is intimidating, threatening, coercive, or obscene and that causes the person

solicited to reasonable fear for his or her safety.   Such conduct, in fact, is expressly

prohibited by subsection (b) of section 9.05.040 of Ordinance No. 4627.   Tellingly,

Plaintiffs do not challenge subsection (b).   At times, threatening behavior may

accompany panhandling, but the correct solution is not to outlaw panhandling.   The

focus must be on the threatening behavior.   Thus, the problem in this case is that Grand

Junction has taken a sledgehammer to a problem that can and should be solved with a

scalpel.   In attempting to combat what it sees as threatening behavior that endangers

public safety, Grand Junction has passed an ordinance that sweeps into its purview

non-threatening conduct that is constitutionally protected.   Thus, the Court is compelled

to strike down subsections (a), (e), (g), (i), and (j) of section 9.05.040 of Ordinance No.

4627.[9]

---

[9] The free speech protections afforded by Article II, Section 10 of the Colorado
Constitution is "of greater scope than that guaranteed by the First Amendment." *Bock v.
Westminster Mall Co.*, 819 P.2d 55, 59 (Colo. 1991).   Therefore, "the level of scrutiny
required to safeguard the broader free speech protections afforded by Article II, Section
10 of the Colorado Constitution [is] necessarily more stringent than that associated with

### C.    Equal Protection Claims

The parties' cross-motions for summary judgment also address Plaintiffs' claim

that the challenged provisions of Ordinance No. 4627 violate their right to the equal

protection of the laws under both the Fourteenth Amendment to the United States

Constitution and Article II, Section 25 of the Colorado Constitution.  Plaintiffs only

argument in support of their equal protection claim is that "[t]he elements are met by

establishing that [Ordinance No. 4627] discriminates on the basis of content."  (Doc. #

85 at 36.)  In support of this argument, Plaintiffs cite *Police Department of Chicago v.*

*Mosley*, 408 U.S. 92 (1972), and *Speet v. Schuette*, 889 F. Supp. 2d 969 (W.D. Mich.

2012), *aff'd on other grounds*, 726 F.3d 867 (6th Cir. 2013).  Grand Junction, on the

other hand, argues that "Plaintiffs' equal protection challenge fails because they are not

members of a suspect class and [Ordinance No. 4627] does not impinge their

fundamental rights."  (Doc. # 84 at 31.)  The Court finds that neither party's analysis

provides much insight.

Section 1 of the Fourteenth Amendment provides that "[n]o state shall . . . deny

to any person within its jurisdiction the equal protection of the laws."  U.S. CONST.

amend. XIV, § 1.  In other words, the government may not treat any person or class of

people differently than any other similarly-situated person or class of people without

providing adequate justification.  The level of scrutiny with which a court reviews a law

challenged on equal protection grounds (i.e., the strength of the justification that must

be provided by the government) depends upon the type of classification made by the

First Amendment analysis."  *Denver Pub. Co. v. City of Aurora*, 896 P.2d 306, 323
(Colo. 1995).  Thus, because the challenged subsections of Ordinance No. 4627 cannot
withstand strict scrutiny as required by the First Amendment, they necessarily cannot
withstand the more stringent scrutiny required by Article II, Section 10 of the Colorado
Constitution.

government or whether the classification affects a fundamental right. *See, e.g.*, *Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("In considering whether state legislation violates the Equal Protection Clause of the Fourteenth Amendment, . . . we apply different levels of scrutiny to different types of classifications.")  "Classifications based on race or national origin . . . and classifications affecting fundamental rights . . . are given the most exacting scrutiny." *Id.* (citations omitted).

In light of the Court's conclusion that the challenged provisions of Ordinance No. 4627 are unconstitutional under the First Amendment, it is not necessary to decide whether the challenged provisions are also unconstitutional under the Equal Protection Clause of the Fourteenth Amendment because the outcome of the case will not be affected.[10]  Nevertheless, for purposes of providing guidance to the parties and to dispose of all of the claims on the merits, the Court will address Plaintiffs' equal protection claim.

The Court finds that the Equal Protection Clause is not applicable to the present matter because Ordinance No. 4627 does not create classifications of individuals at all—let alone classifications based on race or national origin, or classifications affecting fundamental rights.  Yes, Ordinance No. 4627 clearly affects the fundamental right of free speech, but it affects the free speech right of every individual in Grand Junction. The prohibitions on panhandling as set forth in Ordinance No. 4627 apply equally to all persons within the city limits.

---

[10] The Court notes that the Sixth Circuit in *Speet* explicitly declined to consider whether the anti-begging ordinance at issue in that case violated the Fourteenth Amendment because it had already affirmed the district court's finding that the ordinance violated the First Amendment.

In the Court's opinion, the fact that some speech is prohibited while other speech is not does not trigger equal protection analysis.  If that were the case, all First Amendment claims would necessarily be Fourteenth Amendment claims as well.  The Court believes that the Equal Protection Clause prohibits laws that create certain classifications of individuals, not certain classifications of speech.

In support of this conclusion, the Court finds informative cases in which a state law was found unconstitutional under the Equal Protection Clause because the classification made by the law affected an individual's fundamental right.  For example, in *Kramer v. Union Free School District No. 15*, 392 U.S. 621 (1969), the United States Supreme Court struck down a New York statute that limited voting in school district elections to owners or lessees of taxable property and parents or guardians of children in public schools.  In *Dunn v. Blumstein*, 405 U.S. 330 (1972), the Supreme Court invalidated a Tennessee law that created a durational residency requirement for would-be voters.  In both cases, the law at issue created classes of individuals (i.e., property owner vs. non-property owner, parent vs. non-parent, resident for a certain period of time vs. non-resident for a certain period of time) and prohibited individuals in one of the classes from exercising a fundamental right (voting).  Without the government demonstrating that such distinctions were necessary in order to achieve a compelling government interest, the laws could not stand.

Unlike the statutes at issue in *Kramer* and *Dunn*, Ordinance No. 4627 does not deny the exercise of a fundamental right to a certain class of individuals while granting it to another.  As stated above, *no one* in Grand Junction may engage in panhandling as

set forth in Ordinance No. 4627.  Thus, a violation of the ordinance is determined not by *who* speaks, but rather by *what* is spoken.

The mere fact that certain individuals may express the prohibited speech does not mean that those individuals are a class for equal protection purposes.  Such reasoning would lead to the outlandish conclusion that every law creates classes of people—those that follow it and those that do not.  The Court believes that prohibiting such a "classification" is not what the Equal Protection Clause of Fourteenth Amendment is meant to accomplish.

Therefore, the Court will grant summary judgment in favor of Grand Junction on Plaintiffs' equal protection claims under both the Fourteenth Amendment to the United States Constitution and Article II, Section 25 of the Colorado Constitution. [11]

### D.    Due Process Claims

In their third claim for relief, Plaintiffs assert that the challenged provisions of Ordinance No. 4627 are unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment.  Plaintiffs argue that Ordinance No. 4627 is "vague as to 'passive' panhandling."  (Doc. # 85 at 37.)  In support of this argument, Plaintiffs point to the fact that, while the definition  of "panhandling" explicitly states that the solicitor must "approach, accost, or stop" another person, the definition also, in Plaintiffs' reading, "applies to solicitation carried out by 'written signs or other means.'"  (Doc. # 85 at 37-38.)  Plaintiffs also argue that "vagueness concerns are . . . raised by the amended

---

[11] In interpreting the equal protection guarantee under the Colorado Constitution, the Supreme Court of Colorado has "followed the analytical mode developed by the United States Supreme Court in construing the equal protection clause of the fourteenth amendment."  *Firelock Inc. v. Dist. Court in and for the 20th Judicial Dist. of the State of Colo.*, 776 P.2d 1090, 1097 (Colo. 1989).  Thus, because Plaintiffs' challenge under the Equal Protection Clause of the Fourteenth Amendment fails, their challenge likewise fails under Article II, Section 25 of the Colorado Constitution.

ordinance's consent provision." (Doc. # 85 at 39.)  In support of this argument,

Plaintiffs' assert that it is unclear whether the solicitor must obtain the consent of the

person to be solicited before the solicitation takes place. (Doc. # 85 at 39-40.)

Grand Junction, on the other hand, argues that Ordinance No. 4627 "is not

impermissibly vague—it expressly defines what constitutes 'panhandling,' 'obscene,'

and 'obstruct.'" (Doc. # 84 at 34.)  According to Grand Junction, Ordinance No. 4627

"provides fair notice of the conduct it proscribes and is not subject to arbitrary

application."

Section 1 of the Fourteenth Amendment provides that "[n]o state shall . . .

deprive any person of life, liberty, or property, without due process of law." U.S. Const.

amend. XIV, § 1.  To comport with the Due Process Clause of the Fourteenth

Amendment, a law must "give a person of ordinary intelligence fair notice that his

contemplated conduct is forbidden by the statute." *United States v. Lovern*, 590 F.3d

1095, 1103 (10th Cir. 2009) (internal quotation marks omitted).  This notice must be

given "in a manner that does not encourage arbitrary and discriminatory enforcement."

*Skilling v. United States*, 561 U.S. 358, 402-03 (2010).  However, the Supreme Court

has recognized that, "[c]ondemned to the use of words, we can never expect

mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104,

110 (1972).

Despite having already found that the challenged provisions of Ordinance No.

4627 are unconstitutional under the First Amendment, the Court will address Plaintiffs'

due process claims because the Court believes that it is important to both decide the

claim on the merits and provide guidance to the parties on the vagueness issue.

Applying the standards set forth above, the Court finds that Ordinance No. 4627 is not unconstitutionally vague.  Ordinance No. 4627 defines "panhandling" as "to knowingly approach, accost or stop another person in a public place and solicit that person without that person's consent, whether by spoken words, bodily gestures, written signs or other means, for money, employment or other thing of value."  (Doc. # 25-4 at 4.)  It is clear from this definition that all "panhandling," as defined by the ordinance, must begin with the solicitor knowingly approaching, accosting, or stopping another person.  Once that action has taken place, the solicitor may solicit that person by spoken words, bodily gestures, written signs, or other means.  A person sitting or standing still and holding a sign (i.e., a "passive" solicitor), by definition, is not "panhandling" because that person is not approaching, accosting, or stopping another person.  Based upon this natural and straightforward reading of Ordinance No. 4627, the Court believes that the language used is sufficiently clear, such that it would "give a person of ordinary intelligence fair notice" of what conduct is forbidden.

In addition, the Court believes that the consent provision is not unconstitutionally vague.  Again, Ordinance No. 4627 defines "panhandling" to mean "to knowingly approach, accost or stop another person in a public place and solicit that person without that person's consent . . . ."  (Doc. # 25-4 at 4.)  Grand Junction is correct that "consent" is a concept that appears throughout American jurisprudence.  People of ordinary intelligence generally understand what "consent" is and the law expects people to obtain consent in certain instances.  A law that requires "consent" is, based on this alone, not unconstitutionally vague.  Thus, Plaintiffs' argument may be boiled down to the fact that Ordinance No. 4627 does not specify *how* consent is to be obtained.  However, this fact

alone does not render the language unconstitutionally vague.  Of course, common sense tells us that a would-be solicitor could ask whether the person to be solicited consents to the solicitation.  Although cumbersome, and perhaps unrealistic in a real world setting, such a practice would provide the solicitor with express consent (or lack thereof).  The law recognizes that consent may also be implied.  A person may communicate his or her consent through action (or, in some instances, inaction).  Although implied consent may be more difficult to ascertain, it nevertheless is an acceptable form of consent.[12]

Thus, the Court finds that the challenged provisions of Ordinance No. 4627 are not unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment.

### E.      Plaintiffs' Motion for Leave to File a Second Supplemental Complaint

Also before the Court is Plaintiffs' Motion for Leave to File Second Supplemental Complaint.  (Doc. # 66.)  In their proposed Second Supplemental Complaint, Plaintiffs seek to add as a defendant in this litigation Chief Camper, in his official capacity.  In support of their motion, Plaintiffs argue that the proposed Second Supplemental Complaint "sets forth events that have transpired and new facts that have emerged since the filing of the original Complaint in this action on March 18, 2014."  (Doc. # 66.)  More specifically, Plaintiffs assert that, during his deposition on October 21, 2014, Chief Camper "revealed a plan to enforce the challenged ordinance in a manner and under circumstances that contradict representations made by the City in its motion to dismiss and reply in support of motion to dismiss."  (Doc. # 66 at 2.)  Plaintiffs allege that during

---

[12] The Court assumes that Grand Junction understood when it passed Ordinance No. 4627 that "lack of consent" would be an element of a violation of the ordinance and would thus need to be proven in any prosecution under the ordinance.

his deposition, Chief Camper "stated that the ordinance would be enforced against panhandlers who do not initiate interactions but instead solicit silently by holding a sign." (Doc. # 66 at 2.)  Plaintiffs, therefore, seek to enjoin Chief Camper from enforcing the challenged ordinance against them.  (Doc. # 66 at 2.)

In its response to Plaintiffs' motion, Grand Junction asserts that "it is clear from Chief Camper's testimony that neither he nor any City official is presently enforcing the ordinance." (Doc. # 69 at 2.)  Therefore, Grand Junction argues, "Plaintiffs' requested supplemental complaint amounts to an anticipatory as-applied challenge to the ordinance." (Doc. # 69 at 2-3.)  In addition, Grand Junction argues that "[b]ecause the ordinance is not being enforced and the Chief clearly stated that he would seek the input of his attorneys before enforcing the ordinance, there is no live case or controversy." (Doc. # 69 at 3.)  According to Grand Junction, Plaintiffs' motion should be denied because it would be subject to a motion to dismiss and, thus, futile.  (Doc. # 69 at 3.)

In their reply to Grand Junction's response, Plaintiffs assert that "[t]he original complaint includes claims aimed at prohibiting enforcement of the challenged Ordinance as written," whereas the proposed new claims "directly challenge Chief Camper's plan to enforce the Ordinance." (Doc. # 70 at 6.)  In support, Plaintiffs take the position that "the Ordinance as written and as Chief Camper plans to enforce it are not one and the same."  (Doc. # 70 at 6.)

Federal Rule of Civil Procedure 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the

pleading to be supplemented." Trial courts are given "broad discretion" when deciding whether to permit a party to serve a supplemental pleading. *See, e.g.*, *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001). However, a party's request for leave to file a supplemental complaint "should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants." *Id.* (quotation marks and citation omitted).

In the present matter, good reason exists to deny Plaintiffs' motion for leave to file their proposed Second Supplemental Complaint. Filing a Second Supplemental Complaint to add Chief Camper as a defendant in this action would be unnecessarily duplicative because, in the context of this litigation, the City of Grand Junction and Chief Camper in his official capacity are one and the same. *See, e.g.*, *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995) ("A suit against a city official in his official capacity is no different from a suit against the City itself."); *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 695 (10th Cir. 1988) ("A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same."). In other words, Plaintiffs' argument relies on a distinction without a difference. There is no legal significance to adding Chief Camper in his official capacity as a defendant in this action. All orders and judgments binding on Grand Junction are equally binding on Grand Junction's chief of police. Therefore, Plaintiffs have not provided sufficient justification for adding Chief Camper in his official capacity as a defendant in this action.

**F.    Grand Junction's Motion to Stay the Court's Consideration of the Pending Cross-Motions for Summary Judgment for Sixty Days**

Also before the Court is Grand Junction's recently filed motion to stay for sixty days the Court's consideration of the cross-motions for summary judgment.  (Doc. # 110.)  Plaintiffs oppose Grand Junction's motion.  (Doc. # 112.)

In support of its motion, Grand Junction notes the *Reed*, *Thayer*, and *Norton* decisions and states that "[i]n response to these developments in the law, the City of Grand Junction has elected to consider further amendments to Ordinance No. 4627." (Doc. # 110 at 2.)  Grand Junction asserts that the "[f]irst reading of the proposed amended ordinance will occur on October 7, 2015," and "the anticipated date for the full public hearing on the proposed ordinance is October 21, 2015."  (Doc. # 110 at 3.)  Grand Junction also states that "[t]he proposed amendments, if passed, would eliminate all of the challenged portions of the current ordinance as well as other restrictions on panhandling in order to comply with the *Reed* decision."  (Doc. # 110 at 3.)  According to Grand Junction: "The proposed amendments would effectively remove all of the claims for injunctive and declaratory relief from this action.  The only claim that would survive the proposed amendments is Ms. Stewart's claim for nominal damages."  (Doc. # 110 at 3.)

As Plaintiffs correctly point out, Grand Junction has not provided the Court with the text of the proposed amendments to Ordinance No. 4627.  Therefore, the Court is unable to determine the extent to which the proposed amendments address the constitutional infirmities of Ordinance No. 4627.  Moreover, the proposed amendments are just that—*proposed* amendments.  It is not certain that they will pass and, until that time, Ordinance No. 4627 is in effect.  Grand Junction provides an additional reason

why the Court should not stay its consideration of the cross motions for summary judgments—even if Ordinance No. 4627 is amended, Plaintiff Stewart's claim for nominal damages would not be rendered moot.  Therefore, the Court would still be required to assess the constitutionality of the challenged sections of Ordinance No. 4627, and judicial resources would not be conserved by staying consideration of the cross motions for summary judgment.

### III.   CONCLUSION

Accordingly, it is hereby ORDERED that:

Plaintiffs' Motion for Summary Judgement (Doc. # 85) is GRANTED IN PART AND DENIED IN PART.  Plaintiffs' Motion is GRANTED as to Claims One and Five of Plaintiffs' Complaint, and DENIED as to Claims Two, Three, Four, Six, Seven, and Eight of Plaintiffs' Complaint;

Grand Junction's Motion for Summary Judgment (Doc. # 84) is GRANTED IN PART AND DENIED IN PART.  Grand Junction's Motion is GRANTED as to Claims Two, Three, Four, Six, Seven, and Eight of Plaintiffs' Complaint, and DENIED as to Claims One and Five of Plaintiffs' Complaint;

Grand Junction is PERMANENTLY ENJOINED from enforcing subsections (a), (e), (g), (i), and (j) of section 9.05.040 of Ordinance No. 4627;

Plaintiff Stewart is awarded nominal damages in the amount of $1.00;

Plaintiffs shall have their costs pursuant to Federal Rule of Civil Procedure 54(d)(1) and Civil Local Rule 54.1;

Plaintiffs' Motion for Leave to File a Second Supplemental Complaint (Doc. # 66) is DENIED; and

Grand Junction's Motion to Stay the Court's Consideration of the Pending Cross-Motions for Summary Judgment for Sixty Days (Doc. # 110) is DENIED.

The Clerk of the Court shall enter judgment in favor of Plaintiffs on Claims One and Five of Plaintiffs' Complaint and in favor of Defendants on Claims Two, Three, Four, Six, Seven, and Eight of Plaintiffs' Complaint.  All claims and matters having been decided, the Clerk shall close this case.

DATED: September 30, 2015                  BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge